UNITED STATES of America and Carol L. Rusche, Special Agent of the Internal Revenue Service

v.

Gerald S. CARR, President of Business and Security Consultants, Inc.

Civ. A. Nos. 83–3482, 83–3484, 83–3485 and 83–3486.

United States District Court, E.D. Louisiana.

March 22, 1984.

---

Eneid Francis, Asst. U.S. Atty., New Orleans, La., for plaintiffs.

R. Travis Douglas, Metairie, La., for respondent.

McNAMARA, District Judge.

On February 14, 1984, the court conducted an evidentiary hearing to determine whether four summonses issued to Respondent, Gerald S. Carr by the Internal Revenue Service (IRS) pursuant to 26 U.S.C. § 7602 should be enforced. The summonses were issued by Special Agent Carol Rusche of the Criminal Investigation Division to the Respondent in his capacity as president of the following corporations: Weight Watchers of Louisiana, Inc., Weight Watchers of Southern Mississippi, Inc., Business and Security Consultants, Inc. and Stress Analysis, Inc. The summonses were ostensibly for the purpose of calculating the Respondent's 1979, 1980 and 1981 tax liability. For the reasons given below, the court finds that the summonses should be enforced.

■ Respondent contends that the sole motive in issuing the summonses is to garner evidence for a criminal proceeding against the respondent. Such a motive is an illegitimate purpose and renders the summons unenforceable, for the IRS may not use a summons to gather evidence for a criminal investigation. *Donaldson v. United States*, 400 U.S. 517, 532–33, 91 S.Ct. 534, 543–44, 27 L.Ed.2d 580 (1971).

■ In order to enforce the summonses, the government must make a preliminary showing that:

1. The investigation will be conducted pursuant to a legitimate purpose;
2. The inquiry is relevant to his purpose;
3. The information sought is not already within the commissioner's possession, and;

4. The administrative steps required by the Code have been followed.

*United States v. Davis,* 636 F.2d 1028, 1034 (5th Cir.1981), *cert. denied* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) citing *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). By establishing the *Powell* requirements, the government shifts the burden to respondent to either disprove one of the requirements "or to demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of court's process." *Davis,* 636 F.2d at 1034.

## I. PURPOSE OF SUMMONS

As in *Davis,* Respondent points to several facts which indicate criminal purpose. For instance, the summonses themselves were issued by a Special Agent attached to the Criminal Investigation Division, as opposed to a Revenue Agent, attached to the Examination Division. Also, prior to the issuance of the summonses, Revenue Agent Ronald Milligan conducted an audit of the Respondent that spanned an 18-month period and found numerous altered and forged expense receipts. Agent Milligan also photocopied many of the records. In fact Agent Milligan has already prepared a tentative tax deficiency for 1979–1981, making adjustments for the altered deductions. The Respondent argues that there is no need for a second inspection of the original records because the burden lies with the taxpayer to prove the amount of the deduction because the government ordinarily disallows the entire amount unless the taxpayer demonstrates the amount he is actually entitled to. Finally, the Respondent's wife has been served with notice of a criminal tax investigation.

The government contends that it is the Respondent's civil tax liability that is in question. The aforementioned audit was only a "selective" one and, in fact, the IRS has not yet issued a Statutory Notice of Deficiency.

As in *Davis,* respondent's arguments are *to no avail.* There has been no showing that "the IRS has abandoned the pursuit of civil tax collection 'in an institutional

sense'" or made an "institutional commitment" to refer the case for criminal investigation. 636 F.2d at 1036 quoting *United States v. LaSalle National Banks,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978).

■ The *LaSalle National Bank* decision prompted Congress to amend 26 U.S.C. § 7602 to provide a clear definition of when the power to issue an administrative summons exists in order to discourage "wasteful litigation". *See* S.Rep. No. 494, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. and Ad.News 781, 1032. Thus, § 7602(c) now provides that "no summons may be issued ... if a Justice Department referral is in effect with respect to such person." In amending § 7602, congress clearly delineated the boundary between legitimate and illegitimate purpose: unless the Secretary has recommended to the Attorney General a grand jury investigation or criminal prosecution of the tax payer or the Secretary receives a request pursuant to 26 U.S.C. § 6103(h)(3)(B) for the taxpayer's return, the summons is enforceable. *See* 26 U.S.C. § 7602(c)(2)(A).

Since this matter has not yet been referred to the Justice Department, there has been no "institutional commitment" to pursue a criminal prosecution. Thus, the purpose of the summons is legitimate.

## II. RELEVANCY

■ The records which the summonses seek to compel production of must be relevant to the purpose of determining the taxpayer's civil tax liability. 26 U.S.C. § 7602(a)(1); *Davis,* 636 F.2d at 1034. The test of relevancy is whether the summons seeks information which might throw light upon the correctness of the taxpayer's return. *United States v. Wyatt,* 637 F.2d 293, 300 (5th Cir.1981). The relevancy test endorsed in *Wyatt* requires "an indication of a realistic expectation rather than an idle hope that something might be discovered". *Id.* at 300–01.

■ The task of demonstrating the mere relevancy of the documents is easily accom-

plished in this case. The uncontroverted testimony of Agent Milligan was that his audit encompassed only a sampling of the Respondent's corporate records, and in that sampling a number of suspicious documents were revealed. Considering the prevalence of the alterations, there is a realistic expectation that the unexamined, albeit previously available, documents would reveal further discrepancies.

## III. POSSESSION OF INFORMATION SOUGHT

■ Respondent argues that either the information sought is already in the possession of the IRS, or that access to the information was already provided, thus invalidating the summonses. *See United States v. Pritchard*, 438 F.2d 969, 971 (5th Cir. 1971). The "already possessed" doctrine espoused in *Pritchard* is limited to the situation where the government fails to demonstrate that it lacks possession of the sought-after information. *United States v. Garrett*, 571 F.2d 1323, 1328 (5th Cir.1978). Since the government has made a *prima facie* showing, through the affidavit of Agent Rusche and testimony of Agents Milligan and Rusche, that the IRS does not possess the information, the rational of *Pritchard* is inapplicable. *Id.*

■ Furthermore, the "already possessed" doctrine does not absolutely prohibit enforcement of summonses "to the extent that it requests information already in the possession of the IRS". *Davis*, 636 F.2d at 1037. Rather, the "already possessed" doctrine prohibits unnecessary or harassing summonses. *Id.* at 1037–38. *See also United States v. Linsteadt*, 724 F.2d 480 (5th Cir.1984). Neither does prior access to the information requested constitute possession by the IRS. *Davis*, 636 F.2d at 1037–38.

■ In the initial audit, Agent Milligan discovered evidence of fraud. The case was then referred to Special Agent Rusche who in turn issued the summonses in question. The routine audit conducted by Agent Milligan, though protracted, does not fulfill the needs of a special agent investigating fraud. As such, investigation of the taxpayer is considered to be a continuing one and the IRS is not deemed to be in possession of the information sought. *United States v. Popkin*, 623 F.2d 108, 109 (9th Cir.1980); *United States v. Lenon*, 579 F.2d 420, 422 (7th Cir.1978).

■ The government also seeks originals of the documents and records summoned, and not photocopies which the Respondent maintains are in the possession of the IRS. The government convincingly urges that originals are needed so as to better detect alterations or forgery. For this reason, the court finds that the government is entitled to these originals.

## IV. ADHERENCE TO THE ADMINISTRATIVE STEPS

■ There is no dispute that administrative steps required by the Internal Revenue Code have been followed in this case. After it was determined that further examination was warranted, the Respondent was served with the summons pursuant to § 7602. Since the Respondent was not a "third-party record keeper" within the meaning of § 7609(a), prior notice was not required. After the Respondent refused to comply with the summons, the government filed a petition to enforce the summons. The court then held a preliminary hearing and determined that since Respondent raised issues of fact that could effect the legality of the summonses, he was entitled to an evidentiary hearing and pre-trial discovery as set out in *United States v. Roundtree*, 420 F.2d 845 (5th Cir.1969). *See also Powell*, 379 U.S. at 58, 85 S.Ct. at 255.

## V. ABUSE OF PROCESS

■ Since the government has satisfied the four requirements of *Powell* without rebuttal sufficient to disprove any of the requirements, Respondent's last defense is that the enforcement of the summonses constitutes an abuse of process. *Davis*, 636 F.2d at 1034. Examples of an abuse of process would be the enforcement of the

summonses for harassment purposes or the enforcement of a summons which is overly broad or vague.

In regard to any harassment motive the IRS may have toward Respondent, the fact that the Respondent has been the subject of numerous audits in the past does not demonstrate that the instant audit is without legitimate purpose. Agent Milligan's findings of numerous discrepancies lend ample justification to the course of action taken by the IRS in the case at bar. Insofar as the testimony *may* reflect any personal animosity on behalf of the agents involved, such intent is irrelevant to the issue at hand. *Cf. Id.* at 1036.

■ The summonses in question also describe "with sufficient particularity the documents sought to avoid the dangers of overbreadth." *Linsteadt*, 724 F.2d at 483. Nor are the summonses vague. The request made by the summonses is a very detailed one (see Appendix), resembling the summonses at issue in *United States v. Blackburn*, 538 F.Supp. 1376 (M.D.Fla. 1982). In *Blackburn*, the court found that the summonses "set forth with ample clarity those items to be produced." *See Id.* at 1378 n. 1 & 1384.

Accordingly, IT IS ORDERED that the respondent comply with the summonses directed to Gerald S. Carr as (1) President of Weight Watchers of Louisiana, Inc.; (2) President of Weight Watchers of Southern Mississippi, Inc.; (3) President of Business and Security Consultants, Inc.; (4) President of Stress Analysis, Inc. within 15 days from entry of this Order. Respondent is to provide originals of the documents summoned.

## APPENDIX

The summonses in question directed the Respondent to produce:

All documents and records of Weight Watchers of Southern Mississippi, Inc., in your possession or control for the period beginning September 1, 1978 through January 31, 1982 inclusive, including, but not limited to, the following:

1. All bank statements, checkbooks, cancelled checks, check stubs,s checkbook registers, deposit receipts (slips), savings account ledgers, records of certificates of deposit. All correspondence, files of the corporation, accountants workpaper file, accountants correspondence file, and records relating to any safety deposit boxes held by the corporation.

2. Wage Tax Statements, Forms 1099, Employee Earnings statements, Payroll account records, payroll journals and all other payroll records.

3. Receipts journal, any documentation relating to profit sharing checks or credits, all source documentation affecting receipts journal entries including but not limited to cash receipts issued to Lecturers, Class tally sheets, deposit slips, deposit receipts, and informal receipts journal kept by bookkeeper.

4. Cash disbursements journal, all documentation supporting all entries in disbursements journal including but not limited to travel vouchers, petty cash payments, travel expense reports, all general expense records, bills, receipts, invoices, and travel legs, etc.

5. General ledger, payables ledger, accounts receivable ledger, notes payable ledger, any documentation supporting entries to such ledgers. Source documentation for any loans made by the corporation to any entity or by any entity to the corporation. Documentation for any loans guaranteed by the corporation. Any financial statements prepared on behalf of the corporation. Any loan agreements, loan ledgers, collateral agreements, amortization schedules and loan proceed checks for any and all loans made or outstanding. All documentation relating to the evaluations of lecturers.

6. All registration certificates for motor vehicles, boats and airplanes, deeds to real property, records of real prop-

erty transactions, flight logs, engine logs, records of purchases or sales of stocks and bonds, contracts for the purchase or sale of personal property, contracts or agreements for the performances of services.

7. Records of corporate investments, insurance policies, corporate stock books, stock transfer journals, incorporation papers, corporate minute books and any proclamation to dissolve during the periods cited above.