856 F.2d 187
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America; John W. Peirce, Special Agent,
IRS, Plaintiffs- Appellees,
v.
Nubern DEEL, as officer or partner of Triple D. Coal Co.,
Ivy Branch Coal Co., A & D Coal Co., Black Gold
Coal Co., Defendant-Appellant.
 No. 88-1518.
 United States Court of Appeals, Fourth Circuit.
 ARGUED: June 8, 1988.
DECIDED: Aug. 25, 1988.
 
 Gilbert Kenneth Davis (Davis & Associates, on brief), for appellant.
 Laura Marie Conley (William S. Rose, Jr., Assistant Attorney General; Gary R. Allen, Charles E. Brookhart, Tax Division, Department of Justice, on brief), for appellees.
 Before WIDENER and WILKINS, Circuit Judges, and PAUL V. NIEMEYER, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Nubern Deel appeals the denial of his motion to quash summonses issued by the Internal Revenue Service (IRS). We affirm.
 
 I.
 
 2
 Deel is involved in coal mining as a partner with his brother William in Triple D Coal Company, A & D Coal Company, and Black Gold Coal Company. In addition to his role in these partnerships, Deel is an officer of Ivy Branch Coal Company, a corporation. Two other individuals unrelated to the Deels are partners in A & D, and a third associate unrelated to them is a partner in Black Gold. Others involved in working for these entities are Deel's son Stoney, his son-in-law Gary Baker and Vernon O'Quinn, a close family friend.
 
 
 3
 In February 1986 the IRS issued a summons to Deel in his capacity as "officer or partner" of the entities named above, requiring him to give testimony and to produce records, books and papers of those entities pertaining to his son, son-in-law and O'Quinn. In April, another subpoena was issued to Deel in his representative capacity requiring testimony and production of records concerning payments to these same individuals, including W-4 forms, W-2 forms, and other partnership records. Counsel for Deel provided the records of Ivy Branch, conceding that the corporation had no fifth amendment privilege against self-incrimination. However, Deel claimed a privilege with respect to the records of the partnerships. A third summons, simply a duplicate of the second one, was issued in August, and again Deel refused to comply with respect to partnership records.
 
 
 4
 The government and John Peirce, IRS special agent, petitioned to enforce the summonses. Deel replied and moved to quash, asserting that he was so closely identified with each partnership that he had a fifth amendment privilege with respect to partnership documents in his possession. He claimed that:
 
 
 5
 [He] is so closely identified with the proprietory [sic] interest of each mine that he believe[s] he retains his right to refuse to testify about its activities. Mr. Deel is also [so] closely identified with the other family members that he cannot bring himself to testify against them. It goes against the grain. It violate[s] the code of the hills. It just is not done. And it is just not right to demand that a father testify against himself and his own sons.
 
 
 6
 In December 1987 a hearing was held at which Deel offered no evidence to support his claim that the partnerships were "nothing more than ad hoc joint family ventures." At that same hearing an IRS agent testified in support of the petition for enforcement of the summonses. The agent stated that the IRS was attempting to determine whether Baker and O'Quinn were silent partners in Triple D and received partnership income which was not reported on their personal income tax returns. The agent testified that the IRS was investigating Stoney Deel to determine whether he received funds from all four entities which were not reported on his tax return. At the hearing the government submitted that it would no longer require Deel to testify, that it only wanted the documents, and agreed to have the court appoint a custodian for purposes of turning them over to the IRS, rather than requiring Deel to do so.
 
 
 7
 The district court denied the motion to quash and ordered Deel to comply.
 
 II.
 
 8
 Deel first argues that he is so personally identified with each of the partnerships that they "are actually his alter-egos," and that he is therefore entitled to claim fifth amendment protection in the face of the IRS summonses.
 
 
 9
 A corporation, or even an unincorporated entity, does not enjoy a fifth amendment privilege against self-incrimination. Wilson v. United States, 221 U.S. 361 (1911); United States v. White, 322 U.S. 694, 701 (1944). And in Bellis v. United States, 417 U.S. 85 (1974), the Supreme Court held that the privilege cannot be invoked by a member of a three-man law partnership in his representative capacity as custodian of firm documents when he is subpoenaed in that capacity to appear before a grand jury. The Court in Bellis relied and expanded upon the reasoning articulated in White:
 
 
 10
 The analysis of the Court in White, of course, only makes sense in the context of what the Court described as "organized, institutional activity." 322 U.S., at 701. This analysis presupposes the existence of an organization which is recognized as an independent entity apart from its individual members. The group must be relatively well organized and structured, and not merely a loose, informal association of individuals. It must maintain a distinct set of organizational records, and recognize rights in its members of control and access to them. And the records subpoenaed must in fact be organizational records held in a representative capacity. In other words, it must be fair to say that the records demanded are the records of the organization rather than those of the individual under White.
 
 
 11
 417 U.S. at 92-93.
 
 
 12
 Deel argues that his is the exceptional case, governed by dictum in Bellis, which states that "[t]his might be a different case if it involved a small family partnership." 417 U.S. at 101. However, the business entities involved are not merely family-run grocery stores, but instead involve a series of coal mining partnerships, including non-family member-partners. Nor can it be argued that the sole act of producing the subpoenaed documents has independent testimonial significance which would incriminate Deel individually, Braswell v. United States, --- U.S. ----, 56 U.S.L.W. 4681 (U.S. June 22, 1988) (No. 87-3); United States v. Lang, 792 F.2d 1235 (4th Cir.), cert. denied, 93 L.Ed.2d 578 (1986), particularly where, as here, the government has agreed to the appointment of a third party custodian through whom the documents are to be surrendered. Lang, 792 F.2d at 1241-42.
 
 
 13
 Finally, Deel mounts a general challenge to the procedural validity of the summonses, questioning the legitimacy of the IRS's purpose in issuing them, and the relevance of the documents requested in the summonses to the purposes of the investigation. He also argues that the IRS already has the information it seeks because it examined the books and photocopied the records on a prior occasion.
 
 
 14
 Our review of the record indicates the district court was not erroneous in its determination that the documents sought were relevant. See United States v. Linsteadt, 724 F.2d 480, 482 (5th Cir.1984) (a summons is relevant if it seeks information which might throw light upon the correctness of a taxpayer's return). And, although another agent may have previously reviewed the questioned documents, there was nothing to foreclose "a permissible 'second look.' " Lang, 792 F.2d at 1242.
 
 
 15
 AFFIRMED.